IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

AGRON HASBAJRAMI,                    )
                                     )
              Plaintiff              )    1:20-CV-00220-RAL
                                     )
       vs.                           )    RICHARD A. LANZILLO
                                     )    UNITED STATES MAGISTRATE JUDGE
THOMAS HILL,                         )
                                     )
              Defendant              )
                                     )    ECF NO. 31
                                     )

## MEMORANDUM OPINION

This case comes before the Court on the Defendant's Motion to Dismiss Plaintiff's

Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, Motion for

Summary Judgment pursuant to Fed. R. Civ. P. 56 (ECF No. 31). For the reasons discussed

herein, Defendant's Motion to Dismiss will be GRANTED.

## I.    Background and Procedural Posture

Plaintiff Agron Hasbajrami ("Hasbajrami"), an inmate in the custody of the federal

Bureau of Prisons ("BOP"), commenced this civil rights action against Corrections Officer

Thomas Hill ("Hill") by way of a *pro se* Complaint (ECF No. 6). Hill moved to dismiss the

Complaint for failure to state a claim and alternatively for summary judgment based on the

affirmative defense that Hasbajrami had failed to exhaust his administrative remedies (ECF No.

20). Hasbajrami then filed a motion to amend his Complaint (ECF No. 23), which was granted

and mooted Hill's motion. Thereafter, Hasbajrami filed his Amended Complaint (ECF No. 30)

and several supporting exhibits (ECF Nos. 35-37). Hill again responded with a Motion to

1

Dismiss/Motion for Summary Judgment (ECF No. 31). Hasbajrami filed a Response in

Opposition (ECF No. 45). Hill's motion has been fully briefed and is ripe for disposition. All

parties have consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C.

§ 636(c)(1) (ECF Nos. 2, 18).

## II.   Factual Allegations and Claims

Hasbajrami's Amended Complaint alleges the following facts, which the Court accepts as

true for purposes of Hill's motion. Hasbajrami is incarcerated at the federal correctional

institution at McKean, Pennsylvania ("FCI-McKean"). *See* ECF No. 30, ¶ 3; ECF No. 32, p. 1.

Hasbajrami was housed in the Segregated Housing Unit ("SHU") of FCI-McKean from July 19,

2018, until October 31, 2018. *See id.* Hasbajrami is an adherent of the Muslim faith. He asserts

that during time in the SHU, the Quran, the sacred scripture of Islam, was used five times to

support an oscillating fan in his prison block. *See* ECF No. 30, ¶ 10. Hasbajrami's prison block,

Range B, consisted of sixteen (16) cells facing one another and did not have an air conditioning

system. To circulate air throughout the block, the fan needed to be tilted at a certain angle, and a

book or other prop would be placed under the fan to accomplish this. *See id.* at ¶ 7. The use of

the Quran for this purpose was offensive to Hasbajrami, and he alleges that Officer Hill changed

the supporting prop from another item to the Quran purposefully to harass him and violate his

Eighth Amendment rights. *See id.* at ¶¶ 9, 22.

Hasbajrami specifies two occasions when the Quran was placed under the fan during

Hill's shift on Range B block. On August 18, 2018, Hasbajrami was removed from his cell for

his scheduled shower in the evening and he observed the Quran under the fan. He asked Officer

Green, who was on duty at the time, to remove the Quran from under the fan. Later that same

evening, between 5:00 pm and 9:30 pm, Officer Green notified Hasbajrami that the Quran had

been removed. *See id.* at ¶ 16. The next day, on August 19, 2018, when Hasbajrami was taken

out of his cell for a haircut between 12:00 pm and 1:00 pm, he again saw the Quran was under

the fan and he noted that Hill was on shift that day, during those hours, leading Hasbajrami to

infer that Hill was the person who placed the Quran under the fan. *See id.* at ¶ 17. On

September 13, 2018, Officer Best was working on Range B between 2:00 pm and 10:00 pm, and

Hasbajrami again observed the Quran under the fan and requested that it be removed. Officer

Best reported to Hasbajrami that this had been done. *See id.* at ¶ 18-19. The following day, on

September 14, 2018, Hasbajrami was escorted from his cell for recreation and, once again, saw

the Quran under the fan. Hasbajrami surmised that Hill put the Quran back under the fan

because Hill was on shift in Range B from 6:00 am to 2:00 pm. *See id.* at ¶ 20. Hasbajrami does

not claim that the Quran belonged to him or that he was unable to exercise his religion because

of Hill's alleged actions.

Hasbajrami's Amended Complaint includes only an Eighth Amendment claim. In

contrast, his original Complaint asserted a Fourteenth Amendment claim and a religious

harassment claim. *See* ECF No. 6, III. Because Hasbajrami is proceeding *pro se,* the Court will

endeavor to identify all theories of liability potentially supported by the facts alleged in his

pleading regardless of whether he has labeled the claim using the correct legal terms. Further,

although the Amended Complaint is Hasbajrami's operative pleading and any claim omitted

from that pleading may be deemed waived, the Court will nevertheless consider the factual

allegation of both the original Complaint and Amended Complaint in determining whether

Hasbajrami has stated a viable claim or claims. Given his *pro se* status, it is possible he may

have been confused regarding his need to make the Amended Complaint a stand-alone pleading.

In such a situation, the Court may grant the *pro se* plaintiff leave to file a second amended

complaint. *See Gladney v. Doe,* 2021 WL 3549935, at *1 (W.D. Pa. Aug. 11, 2021).  In the interest of judicial efficiency, however, the Court in this case will consider both pleadings in deciding Hill's motion.  As relief, Hasbajrami requests that Hill be suspended and retrained before being placed back in the prison facility. *See* ECF No. 6-2, pp. 7-8.  He also seeks $50,000 in punitive damages. *See* ECF No. 6, VI.

In his original Complaint, Hasbajrami also alleged that he filed a grievance regarding the repeated placement of the Quran under the oscillating fan.  He stated, "I filed BP-228 [to counsel], BP-229 [to warden], BP-230 [to region], and BP-231 [to central office]."  ECF No. 6, p. 3.  He further stated that the grievance was rejected as untimely on January 29, 2019. *See id.* Hasbajrami also attached the history of his grievance and related emails at ECF No. 6-2.  His Complaint included an email chain with various members of prison administration wherein he asked for a memo stating that the "'Administrative Remedy Process was not available to me in the SHU or that it was not my fault' I couldn't start the grievance process on time."  ECF No. 6-2, p. 14.  More specifically, Hasbajrami stated that he requested form BP-8 on several different occasions while he was housed in the SHU and staff never provided him with the form. *See id.* He asserted that as soon as he was released from the SHU, he obtained the BP-8 and started the process. *See id.* ("There was no way for me to start the process of Administrative Remedies prior to me being released from the SHU.  The process was unavailable to me.  The 20 day elapsed is due to me being in the SHU without BP-8s to initiate the process.").  The email exchange between Hasbajrami and prison personnel demonstrates that he sought the memo to support his appeal from the dismissal of his grievance as untimely.  The remarks accompanying the denial of Hasbajrami's grievance advised him that he could resubmit the grievance with a staff memo explaining why the late filing was not his fault. *See id.* at 1, 2, 4.

Hasbajrami's request for a memo met with apparent confusion and ultimate rejection, including a response stating, "I am not sure what these administrative remedies are for but you have not been in SHU since October 31, 2018. That is over a year ago so I am confused on why you are now stating that you can't file them due to not having access to the forms." ECF N0. 6-1, p. 14. Assistant Warden Washington responded,

> A review of this matter reveals that Unit Team does SHU rounds daily. So you had daily access to staff while you were housed in the Special Housing Unit (SHU). These Administrative Remedies were filed and rejected on 12-18-2018 by FCI McKean. They were rejected because they were untimely. The rejection served as a notice to you at that time you need documentation to explain the delay in filing. At this time a request for staff to provide you with a memo for a delay in filing is not reasonable.

*Id.* at 13.

Unit Manager Browley responded, "I cannot give you a memo citing a delay due to not having any knowledge of what happened." *Id.* at 12. From Unit Manager Nink: "I can't do a memo for you a year later. If you would have requested it after your BP9 was rejected a year ago I could have provided one if there was reason why you were late on your request for administrative remedy." *Id.* at 10.

Hasbajrami argues that the unavailability of BP-8 grievance forms in the SHU and the failure of staff to provide the memo necessary to explain his inability to timely file his grievance excused the untimeliness of his grievance and rendered his administrative remedies unavailable.

## III. Standard and Scope of Review

### A. Motion to Dismiss under 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In

5

deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

6

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), the Court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  A court may take judicial notice of documents filed in other court proceedings because they are matters of public record.  *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013).

Finally, because Hasbajrami is representing himself, the allegations in the Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *See Boag v. MacDougall*, 454 U.S.

7

364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969)

(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of

tolerance"). Thus, the Court may consider facts and make inferences where it is appropriate.

But "any pleading must still contain sufficient factual allegations that, when accepted as true,

'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4

(W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted). *See also*

*Baez v. Mooney*, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation*

*adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

### B. Motion for Summary Judgment under Rule 56

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A

disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of

the case under applicable substantive law. *See Anderson*, 477 U.S. at 248; *Gray v. York*

*Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See*

*Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*,

927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court

must view the record and all reasonable inferences to be drawn therefrom in favor of the

8

nonmoving party. *See Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

**IV.   Discussion and Analysis**

Hasbajrami's Amended Complaint alleges that Hill subjected him to religious harassment and violated his Eighth Amendment rights when he repeatedly placed the Quran under an oscillating fan in his cell block with knowledge that this was offensive to his religious beliefs. Hill's motion asserts several grounds for dismissal of the Amended Complaint, including that a private cause of action for the constitutional violation asserted by Hasbajrami is not authorized under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny and that, in any event, his factual allegations fail to state an Eighth

9

Amendment claim. Hasbajrami's original Complaint also asserted a religious harassment claim and a Fourteenth Amendment due process claim. The Court construes the religious harassment claim as one asserted under the First Amendment Free Exercise Clause. Hill's motion does not address Hasbajrami's religion and due process claims as neither was included in the Amended Complaint.

As an affirmative defense, Hill's motion for summary judgment asserts that Hasbajrami has not exhausted his administrative remedies before filing this federal lawsuit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). Because the Court of Appeals for the Third Circuit has directed that the exhaustion defense be considered as a threshold matter, the Court will begin its analysis with that defense.

### A.   Failure to Exhaust

The PLRA prohibits an inmate from bringing a lawsuit concerning prison conditions absent exhaustion of available administrative remedies. *Scott v. Clark*, 2021 WL 3269653, at \*1 (W.D. Pa. July 30, 2021). Whether an inmate has exhausted available administrative remedies is a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013) (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (3d Cir. 2010)). Because exhaustion "is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts," *Small*, 728 F.3d at 270-71, the court serves as "the finder of fact with respect to the defense that a plaintiff failed to exhaust available administrative remedies as required by PLRA." *Jackson v. Shouppe*, 2020 WL 3574645, at \*2 (W.D. Pa. June 30, 2020). An evidentiary hearing is the appropriate mechanism to resolve factual disputes and decide this threshold issue. *See Small*, 728 F.3d at 270-271; *Fahey v. Sacks*, 2019 WL 266336, at \*1 (W.D.

10

Pa. Jan. 18, 2019).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense that a defendant must plead and prove. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). Hill has properly raised the defense and made a *prima facie* showing that Hasbajrami failed to file his grievance within twenty days of the conduct at issue as required by applicable BOP grievance procedures. This procedural default . does not, however, end the analysis. "[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *see also Hardy v. Shaikh*, 959 F.3d 578, 587 (3d Cir. 2020) (noting that "the burden to plead and prove that he was thwarted [from exhausting his administrative remedies] rests on the inmate"). Thus, this Court must determine whether Hasbajrami has produced evidence to support a finding that prison administrative remedies were unavailable to him.

The Supreme Court has recognized three "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). They are (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use—*i.e.,* some mechanism exists to provide relief, but no ordinary prisoner can navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of [the grievance process] through machination, misrepresentation, or intimidation." *Id.*

11

Hasbajrami has properly raised the third circumstance in response to Hill's motion. He contends that FCI-McKean did not make BP-8 grievance forms available to him while he was housed in the SHU and that prison officials thwarted his ability to establish this as the legitimate excuse for the untimeliness of his grievance by refusing to confirm the information. Hasbajrami has produced evidence, including his exchange of email with prison officials, sufficient to raise an issue of fact whether the administrative grievance process was available to him in this case. The record is not sufficiently developed to allow the Court to decide this issue on Hill's motion. Instead, it would be necessary for the Court to conduct an evidentiary hearing pursuant to *Small* to resolve disputes of facts relevant to this issue. As explained below, however, the Court concludes that such a hearing is unnecessary because the allegations of Hasbajrami's Complaint and Amended Complaint fail to state a claim under the First, Eighth, or Fourteenth Amendments to the Constitution or other federal law independent of Hill's exhaustion defense.

## B.   Hasbajrami's constitutional claims fail as a matter of law.

Hill argues that Hasbajrami's constitutional claims must be dismissed because *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny do not recognize a private right of action for these claims and extending the *Bivens* remedy to these claims would be contrary to case law. Hill is correct on both points.

While 42 U.S.C. § 1983 authorizes civil actions against state actors for violations of constitutional rights, Congress has enacted no corresponding statutory authorization for such actions against federal government actors. *See Pauley on behalf of Asatru/Odinist Faith Cmty. v. Samuels*, 2019 WL 4600195, at *5 (W.D. Pa. Sept. 23, 2019) (citing *Karkalas v. Marks*, 2019 WL 3492232, *6 (E.D. Pa. July 31, 2019)). In *Bivens*, however, the United States Supreme Court recognized an implied right of action for damages against federal officials who have

12

violated a person's Fourth Amendment rights. *See Bivens*, 403 U.S. at 396. The Court found that this right of action was grounded in the Constitution itself rather than any express or implied statutory authorization to sue. *See id.* at 396-97.

The Supreme Court has extended a *Bivens* remedy twice: in *Davis v. Passman*, 442 U.S. 228 (1979), where it held that an administrative assistant fired by a congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim, and in *Carlson v. Green*, 446 U.S. 14 (1980), where the Court permitted a *Bivens* remedy against federal prison officials for failure to treat a prisoner's serious medical condition. Since these decisions, the Supreme Court has declined to further extend *Bivens*. Instead, the Court has expressly confined *Bivens* actions to the limited range of claims previously recognized. *See Corr. Srvs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (referring to *Bivens* as a "limited holding."). *See also Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017) (noting that "over the course of nearly four decades, the Supreme Court has repeatedly refused to recognize *Bivens* actions in any new contexts"). The Court reaffirmed the limited nature of the *Bivens* remedy in *Ziglar v. Abbasi*, stating that *Bivens*, *Davis* and *Carlson* are the "only instances in which the Court has approved of an implied damages remedy under the Constitution itself." — U.S. —, 137 S. Ct. 1843, 1855 (2017).

In *Ziglar*, the Supreme Court observed that *Bivens* was decided during an "ancien regime," in which "the Court assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Id.* (citations omitted). Noting that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," the Supreme Court instructed federal courts to exercise caution before extending the remedy to claims that are meaningfully different than "the three *Bivens* claims the Court has approved in the past...." *Id.* at 1857, 1860 (citing *Bivens*, 403 U.S. 388; *Davis*, 442 U.S. 228; *Carlson*, 446 U.S. 14).

13

None of the three cases where the Supreme Court has recognized the *Bivens* remedy applies to Hasbajrami's claims in this case. Since *Bivens*, courts asked to extend its holding have considered whether alternative remedies exist and whether the judiciary is suited to decide such an issue:

> [W]e must first ask "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." Then, "even in the absence of an alternative, ... [we] must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed ... to any special factors counselling hesitation before authorizing a new kind of federal litigation."

*Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017) (internal citations omitted).

Although Hasbajrami has attached various legal labels to his claims, his factual allegations appear to present a First Amendment "freedom of expression" or "free exercise" of religion claim. This claim is not appropriate for recognition of a *Bivens* remedy. The Supreme Court has never implied a *Bivens* remedy under any clause of the First Amendment. *See Reichle v. Howards*, 566 U.S. 658 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Considering whether there are any "special factors" warranting extension of the remedy requires weighing "reasons for and against the creation of a new cause of action, the way common law judges have always done." *Wilkie v. Robbins*, 551 U.S. 537, 554 (2007). "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Ziglar*, 137 S. Ct. at 1857 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). Most often, the answer is Congress. *See id.* "When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Id.* (citations omitted). This is particularly apparent in this case because Congress has spoken on the issues implicated by Hasbajrami's allegations in the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(b)(1–2), which the Court

discusses below. Therefore, Hasbajrami is not entitled to money damages by way of his First Amendment claim.[1]

To the extent Hasbajrami's original Complaint or Amended Complaint seeks equitable relief, it also fails to state a claim. The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith." *Noble v. Wetzel*, 2020 WL 3211893, at *5 (W.D. Pa. May 11, 2020) (quoting *Cruz v. Beto*, 405 U.S. 319, 322, 322 n. 2, 92 S. Ct. 1079, 31 L.Ed.2d 263 (1972) (*per curiam*)). Where a prison regulation "impinges on inmates' constitutional rights," prison officials must demonstrate that "it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). A four-part test applies for assessing the overall reasonableness of the regulation: (1) whether the regulation or practice bears a "valid, rational connection" to a legitimate and neutral governmental objective; (2) whether prisoners have alternative ways of exercising the circumscribed right; (3) "[what] impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *See id.* at 89-90. The *Turner* analysis applies, however, only where the inmate alleges "that there is a prison policy impinging on his First Amendment rights." *Garraway v. Lappin*, 490 Fed. Appx. 440, 445 (3d Cir. 2012). The *Turner* analysis is

---

[1] As noted, Hasbajrami's pleadings have also invoked the Fourteenth Amendment and the Eighth Amendment as legal theories. However, neither amendment is implicated by Hasbajrami's factual allegations. First, although the Due Process Clause of the Fourteenth Amendment echoes that of the Fifth Amendment, it is the latter that applies against the federal government. The Due Process Clause of the Fifth Amendment mandates procedural safeguards against governmental deprivations of an individual's property and liberty interests. *See Klein v. Califano*, 586 F.2d 250, 257 (3d Cir. 1978). Hasbajrami does not allege the deprivation of any property or liberty interest, and, in any event, procedural due process requirements were satisfied through the BOP grievance system. His pleadings likewise do not implicate the Eighth Amendment as they do not allege any facts to indicate that Hasbajrami was denied "the minimal civilized measure of life's necessities." *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

unnecessary in this case because Hasbajrami does not allege the existence of a prison policy that impinges on his rights. *See id.*

## C.   The Amended Complaint fails to state a claim under the Religious Freedom Restoration Act.

Although Hasbajrami does not expressly assert a claim under the RFRA, his factual allegations concern his religious beliefs and arguably touch on protections provided under that Act. Accordingly, the Court will assess whether Hasbajrami's allegations state a claim under the RFRA.

Congress enacted the RFRA to provide greater protection to prisoners' religious rights. Under the RFRA, the federal "government shall not substantially burden a person's exercise of religion" unless "application of the burden ... is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that ... interest." 42 U.S.C. § 2000bb-1(b)(1–2). The RFRA authorizes a cause of action and the recovery of money damages against government officials who violate its proscription. *See Tanzin v. Tanvir*, --- U.S. ---, 141 S. Ct. 486, 489–93 (2020). Once a plaintiff demonstrates that he has a sincere religious belief that government action has substantially burdened, the burden shifts to the government official to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(a), (b). The RFRA directs that it "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Act and the Constitution." 42 U.S.C. § 2000cc–3(g).

The RFRA does not explain, however, what constitutes a "substantial burden" on the exercise of religion. Courts interpreting this term have held that "burdens on religious exercise need not be intentional, only substantial," to be actionable under the RFRA. *Mack v. Warden*

16

*Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016). Other courts have examined identical statutory language in the context of cases interpreting the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[2] Under that analogous statute, courts have recognized that a "substantial burden" "exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Given the identity of language used in the RLUIPA and the RFRA and the similar objectives of those statutes, the judicial definition of "substantial burden" under the RLUIPA has consistently been applied in cases interpreting the RFRA. *See Mack*, 839 F.3d at 304 n.103 (holding that the definitions of "substantial burden" in RFRA and RLUIPA are "analogous").

Under the RLUIPA, "Congress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting § 2000cc-5(7)(A)).[3] Indeed, the "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). Still, the RLUIPA's scope is not endless, because the statute's text commands that not any or all burdens on religion are covered, only

---

[2] RLUIPA does not apply to employees of federal prisons. Instead, it covers state governments or entities, their officials, or persons acting under color of state law. *See Garraway v. Lappin*, 490 Fed. Appx. 440, 443 n.2 (3d Cir. 2012) (per curiam) (citations omitted); *Rogers v. United States*, 696 F. Supp. 2d 472, 486 (W.D. Pa. 2010) (citing 42 U.S.C. § 2000cc–5(4)) (other citations omitted).

[3] Under RLUIPA it is error to conclude the government has not substantially burdened a prisoner's religion because of "the availability of alternative means of practicing religion." *Holt*, 574 U.S. at 361-62. "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise…, not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.*

17

"substantial" ones. *Washington*, 497 F.3d at 281 (3d Cir. 2007) (citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (stating, in the land use context, that "[a]pplication of the substantial burden provision to a regulation inhibiting or constraining *any* religious exercise...would render meaningless the word 'substantial'")). The inmate "bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington*, 497 F.3d at 277-78.

Although the allegations of the Amended Complaint support that Hasbajrami's religious beliefs are sincerely held, they do not support that Hill's alleged action has substantially burdened the exercise of his religion. Accordingly, the burden does not shift to the government to justify Hill's alleged action based on a compelling governmental interest. Hasbajrami alleges that Hill's use of a Quran to prop up a fan is offensive to his religious beliefs, but he has not alleged any actual burden on his religious exercise. He has not alleged ownership of the Quran in question or that he has been deprived of or limited in access to any item or facility used in the exercise of his faith. In addition, Hasbajrami's allegations regarding Hill's involvement in placing the Quran under the fan are tenuous, and he acknowledges that the Quran was removed from beneath the fan upon his requests. While the Court does not condone any prison official disregarding Hasbajrami's religious objections to the use of a Quran as alleged in the Complaints, this religious insensitivity does not rise to the level of a violation of the RFRA.

### D. Hill is also entitled to dismissal of the Amended Complaint based on qualified immunity.

Hill has also raised the affirmative defense of qualified immunity as an alternative ground for dismissal of Hasbajrami's claims. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability." *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005).

While qualified immunity is more commonly addressed as an affirmative defense to constitutional claims, it is also properly raised as a defense to federal statutory claims under the RFRA. *See Pauley on behalf of Asatru/Odinist Faith Cmty. v. Samuels*, 2019 WL 4600195, at *10-11 (W.D. Pa. Sept. 23, 2019), appeal filed, No. 19-3666 (3d Cir. Nov. 15, 2019); *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012); *Weinberger v. Grimes*, 2009 WL 331632, at *5 (6th Cir. Feb. 10, 2009) (slip copy); *Padilla v. Yoo*, 678 F.3d 748, 757, 768-69 (9th Cir. 2012); *Davila v. Gladden*, 777 F.3d 1198, 1209–12 (11th Cir. 2015), *cert. denied sub nom. Davila v. Haynes*, 557 U.S. 820 (2015); *Walden v. Ctrs. for Disease Control and Prevention*, 669 F.3d 1277, 1285 (11th Cir. 2012) ("The defense of qualified immunity applies not only to constitutional claims, but also to claims brought for alleged violations of RFRA."); *Rasul v. Myers*, 563 F.3d 527, 533 n.6 (D.C. Cir. 2009) (*per curiam*) (holding, in the alternative, that federal officials were entitled to qualified immunity against claims brought for violations of RFRA). Accordingly, the Court will examine whether qualified immunity shields Hill from both Hasbajrami's constitutional and RFRA claims in this case.

The Supreme Court has provided a two-step inquiry for analyzing claims of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was

clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (internal citations and quotations omitted). [4]

In determining whether a right was clearly established, the inquiry focuses on the official's actual situation and, therefore, "must be undertaken in light of the specific context of the case, not as a broad general proposition...." *Id.* The second prong of analysis thus "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). If the law did not put the officer on notice that his conduct would be clearly unlawful, dismissal based on qualified immunity is appropriate. *See Bayer v. Monroe County Children and Youth Serv.*, 577 F.3d 186, 193 (3d Cir.2009) (citing *Saucier*, 533 U.S. at 202).

The Court has already determined that Hasbajrami's pleadings fail to state a claim under any provision of the Constitution or the RFRA. Therefore, it necessarily follows that Hill is also shielded from liability under the first prong of the *Saucier* analysis and there is no need to proceed to an evaluation of the second prong of the analysis.

## V.    Amendment

Having determined that Hasbajrami's original Complaint and Amended Complaint fail to state a claim against Hill, the Court must now determine whether further amendment is appropriate. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) (stating "[t]he U.S. Court of Appeals for Third Circuit

---

[4] The Supreme Court has since eliminated the requirement that *Saucier*'s two steps be analyzed in sequential order and instead left it to the "sound discretion" of the district courts and the courts of appeals to decide "which of the two prongs of the qualified immunity analysis should be addressed first...." *Pearson*, 555 U.S. at 236.

has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile"). Hasbajrami has already had the opportunity to amend his pleadings to allege facts to state a claim. He has failed to offer facts that approach a viable claim and based on the factual allegations of his prior pleadings, no amendment could plausibly place his constitutional claim within the scope of a *Bivens* remedy or demonstrate a "substantial burden" on the exercise of his religion to support a RFRA claim. Thus, it would be futile to allow further amendment. Accordingly, all claims in this action will be dismissed with prejudice.

## VI.    Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss (ECF. No 31) will be GRANTED.    A separate Order follows this Memorandum.

DATED this 17th day of February, 2022.

BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

21